## AMERICAN SPLIT-FEATHER DUSTER CO. *v.* LEVY.[1]

*(Circuit Court, E. D. Pennsylvania. June 13, 1890.)*

**1. PATENTS FOR INVENTIONS—FEATHER DUSTER—LACK OF INVENTION.**

The patent was for a feather duster, suitable for use on fine furniture, composed of stiff hard feathers split and manipulated, to render them soft and pliable. The process of splitting and manipulating employed was old, though not previously applied to the particular kind of feathers used, and not carried to quite the same extent. Dusters made of soft feathers were also old, as was the idea of softening stiff feathers for this use by other means. *Held,* the patent was void for lack of invention, as the patentee has only substituted one known kind of soft feather for another. Following *Hollister* v. *Manufacturing Co.,* 113 U. S. 59, 5 Sup. Ct. Rep. 717.

**2. SAME—INVENTION.**

That efforts to soften stiff feathers for dusters had previously been made by the application of oil and other substances does not show the patent called for an invention, since the result obtained was such as any one skilled in the art, and desiring a cheap pliable feather, would be likely to reach by common reason and observation.

Bill by the American Split-Feather Duster Company against S. Levy to Enjoin Infringement of Patent.

*Watson & Thurston,* for plaintiff.

*Horace Pettit, Frank M. Wirgman,* and *Alexander P. Colesbury,* for defendant, cited on the point decided, *Smith* v. *Murray,* 27 Fed. Rep. 69; *Guidet* v. *Brooklyn,* 105 U. S. 550; *Matress Co.* v. *Whittlesey,* 8 Biss. 23.

BUTLER, J. The suit is for infringement of letters patent No. 385,-070, granted to Guilbert M. Richmond, June 26, 1888, for "improvement in feather dusters," the claims of which are as follows:

"*First.* As a new and useful article of manufacture, a soft light feather duster made of stiff heavy feathers reduced in weight, and rendered more pliable by splitting or shaving off their ribs, substantially as described. *Second.* As a new and most useful and perfect article of manufacture, a soft, light, and flexible feather duster, made of stiff heavy feathers, rendered soft, light, pliable, and elastic, by the removal of the ribs of their shafts, and withing the backs thereof, substantially as described."

The defense assails the patent on several grounds, the most serious of which is, probably, "want of patentable novelty." The history of the art shows that feather dusters have been made time out of mind, and of various kinds of feathers; that for fine dusters—used on cloth, furniture, etc.—the feathers must be soft and pliable, and that, prior to 1873, feathers for such dusters were obtained from the ostrich and South American vulture; that these feathers are, comparatively, scarce, and the brushes made from them expensive; that before and at the time of Mr. Richmond's alleged invention, efforts were made to find a substitute for these feathers, less costly, and experiments were made with the wing and tail feathers of turkeys. Being (comparatively) stiff and brittle in their natural state, unsuccessful attempts were made to remove this objection-

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

able feature, by the application of oil, and other substances; that a process for increasing the softness and pliability of feathers had long been employed, which consisted in splitting, scraping, and manipulating in various ways; that feathers so treated were used in the manufacture of tufts, plumes, and other similar devices. This much respecting the art is certain if not undisputed. The defendant further asserts that the coarse feathers of turkeys were so dressed, and used in making dusters, prior to 1873, and has produced some evidence in support of it. Whether he has proved the assertion need not be determined at present. Mr. Richmond, applied this process of dressing to the tail and wing feathers of turkeys,—carrying the manipulation a little further, probably,—and used them in the manufacture of dusters. By this means he obtained a soft, pliable article, which soon became popular, and thereby greatly reduced the price of fine dusters.

Does his art display patentable novelty? In other words, was invention required to do what he did? What constitutes patentable novelty or invention, as contemplated by the patent law, has been so fully and repeatedly discussed in the numerous cases in which the question has arisen, that further elaboration would be waste of time. Two-thirds, probably, of all suits brought to enforce patents, have involved it, and more time has been employed in its elucidation than has been expended on any other question of patent law. As is said by the supreme court in *Hollister* v. *Manufacturing Co.*, 113 U. S. 59, 5 Sup. Ct. Rep. 717, a device which displays only the expected skill of the maker's calling, and involves only the exercise of ordinary faculties of reasoning, upon material supplied by special knowledge, and facility of manipulation resulting from habitual intelligent practice, is in no sense a creative work of the inventive faculty, and such as the constitution and patent laws aim to encourage and reward. It is something, as the court further says at page 72, which springs "from that intuitive faculty of the mind, put forth in the search for new results, or new methods, creating what had not before existed, or bringing to light what lay hidden from vision." In other words, it is a new thing produced by the exercise of the inventive or creative faculty, and not by the employment, simply, of common reason applied to existing and known facts.

In this view of the law did Mr. Richmond's act require invention? He had before him, as we have seen, feather dusters of various descriptions, embracing those made of soft pliable feathers. What he did, substantially, was to substitute one kind of soft pliable feathers for another. If the substituted feathers had been sufficiently soft and pliable in their natural state, he would hardly claim that the substitution required invention. His claim seems to rest on the fact that he dressed feathers so as to increase their softness and pliability and substituted these. If he had been the first to discover and employ the process of dressing, his claim would find support in that fact. But, as we have seen, he was not. He probably carried the process a little further than had previously been done, rendering the feathers a little more pliable; though this is disputed. If he did, it is unimportant. The most he can claim

is that he was the first to apply such dressed feathers to the manufacture of dusters. While this also is disputed, I will treat him as entitled to the claim. As dressed feathers were old, how does the substitution of them differ from the substitution of other suitable feathers in their natural state, (if such could be found?) It is true he did not use feathers dressed by others, nor dress the same kind others dressed. He used the coarse feathers of turkeys. If he had used those dressed by others, and found on sale, he would hardly claim that his act embraced invention, or novelty even. He would simply have substituted one soft pliable feather for another. Then did it require invention to apply the old process of dressing to other feathers, and substitute these, instead of the dressed feathers found on sale? Substantially this is all he did. He was not the first even, as we have seen, to conceive the idea of softening and applying coarse feathers to this use. The only problem, when he began, was how can such feathers be softened and rendered pliable. While others were experimenting with a view to its solution, he applied the old familiar process of splitting and manipulating.

With every disposition to sustain the patent, not only because of the presumption arising from its grant, but also and more especially because of the benefit which the patentee conferred upon the public, I am unable to find any patentable novelty in what he did. There does not seem to be anything like invention about it. What he accomplished was the result, simply, of common reasoning from existing known facts,—such a result as any one skilled in the manufacture of dusters, and desiring a cheap pliable feather, would be likely to reach. To say that others did not reach it is not an answer. An obvious result, attainable by observation and ordinary reason, is often overlooked for a time,—as in the case of the revenue stamp, involved in *Hollister* v. *Manufacturing Co.* The importance and value of the result there was greater than here. Nevertheless (and notwithstanding the ingenuity displayed by the patentee, and the fact that others had sought for and missed it,) the patent was declared invalid. A reference to the general remarks of the court in that case is sufficient to dispense with further observations on the subject here. As this view disposes of the controversy, an examination of other questions raised and discussed is unnecessary. A decree may be prepared dismissing the bill, with costs.